# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

NETLIST, INC.

     Plaintiff,

       vs.

SK HYNIX INC. and SK HYNIX AMERICA INC.

     Defendants.

Civil Action No. 6:20-cv-00194-ADA

**JURY TRIAL DEMANDED**

## PLAINTIFF NETLIST, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

Dated: May 18, 2020

James M. Wodarski
Andrew H. DeVoogd
Matthew S. Galica
MINTZ LEVIN COHN FERRIS GLOVSKY AND
  POPEO P.C.
One Financial Center
Boston, MA 02111
Tel: 617-542-6000

J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429

*Attorneys for Plaintiff Netlist Inc.*

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................. 2

III.  ARGUMENT ...................................................................................... 4

    A.  The First-To-File Rule Does Not Apply Here, Because Netlist Is Asserting Different Patents Than Those Asserted In The California Cases .......................... 4

        1.  The California Actions Are Neither Duplicative Nor Substantially Similar ....................................................................................... 5

        2.  The First-To-File Rule Does Not Apply, Because Transfer Would Not Serve Judicial Efficiency ................................................... 7

        3.  Transfer Will Not Result In Any Efficiencies ........................... 9

    B.  Venue in the Central District of California Is Improper, Because SK hynix Has No Regular and Established Place of Business There .................................. 10

    C.  The Central District of California Is Not "Clearly" More Convenient ................ 11

        1.  The Private Interest Factors Do Not Clearly Support Transfer ............... 11

        2.  The Public Interest Factors Do Not Clearly Support Transfer ................ 14

    D.  This Case Should Remain in the Waco Division, Netlist's Choice of Forum ........................................................................................... 15

IV.  CONCLUSION .................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADS Sec. L.P. v. Advanced Detection Sec. Servs.*,
   No. A-09-CA-773 LY, 2010 U.S. Dist. LEXIS 27903 (W.D. Tex. Mar. 23,
   2010) ...............................................................................................................................13

*Affinity Labs of Texas, LLC v. Samsung Elecs. Co.*,
   No. 6:13-cv-364, 2014 WL 12570501 (W.D. Tex. June 10, 2014) .......................................13

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ..................................................................................................7

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) ...............................................................................................5, 7

*Candela Corp. v. Palomar Med. Techs., Inc.*,
   No. 9:06-CV-277, 2007 U.S. Dist. LEXIS 19994 (E.D. Tex. Feb. 22, 2007) ..........................8

*Chapman v. Dell, Inc.*,
   No. 09-CV-7, 2009 U.S. Dist. LEXIS 50654 (W.D. Tex. Apr. 15, 2009) ..............................15

*CloudofChange, LLC v. NCR Corp.*,
   No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020).....................................................................12

*Cummins-Allison Corp. v. Glory Ltd.*,
   No. 2-03-CV-358, 2004 U.S. Dist. LEXIS 13839 (E.D. Tex. May 26, 2004) ..........................8

*Datamize Inc. v. Fid. Brokerage Servs., LLC*,
   No. 2:03-cv-321-DF, 2004 U.S. Dist. LEXIS 29100 (E.D. Tex. Apr. 22, 2004) .................5, 6

*Dataquill, Ltd. v. Apple Inc.*,
   No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410 (W.D. Tex. June 13,
   2014) ...............................................................................................................................14

*Document Generation Corp. v. Allscripts*,
   No. 6:08-CV-479, 2009 U.S. Dist. LEXIS 149038 (E.D. Tex. May 19, 2009)....................4, 6

*EROAD Ltd. v. PerDiemCo LLC*,
   No. 6:19-CV-00026-ADA (W.D. Tex. Sept. 19, 2019)..........................................................14

*Fintiv, Inc. v. Apple, Inc.*,
   No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102 (W.D. Tex. Sept.
   10, 2019) .......................................................................................................................12, 13

*Garmin Ltd. v. TomTom, Inc.*,
   No. 2:06-CV-338, 2007 U.S. Dist. LEXIS 15214 (E.D. Tex. Mar. 5, 2007) ...........................8

*Humble Oil & Refinery Co. v. Bell Marine Servs. Inc.*,
   321 F.2d 53 (5th Cir. 1963) .............................................................................................11

*Hunter Douglas, Inc. v. Nien Made Enter. Co.*,
   2016 WL 6822310 (C.D. Cal. May 23, 2016) ........................................................................7

*In re ASM Int'l, N.V.*,
   774 F. App'x 650, 652 (Fed. Cir. 2019) ................................................................................8

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)...............................................................................12, 14

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009).........................................................................................14

*In re Telebrands Corp.*,
   824 F.3d 982 (Fed. Cir. 2016)........................................................................................4, 5

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010).........................................................................................11

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................................................11

*Integra Techs. Int'l, Inc. v. Durst Image Tech. US LLC*,
   No. A-09-CA-143-SS, 2009 U.S. Dist. LEXIS 135920 (W.D. Tex. Aug. 20,
   2009) ...............................................................................................................................6

*j2 Glob. Commun's., Inc. v. Protus IP Sols., Inc.*,
   No. 6:08-CV-211, 2008 U.S. Dist. LEXIS 103609 (E.D. Tex. Dec. 23, 2008)........................9

*MDI, Inc. v. Minh Phan*,
   No. SA-07-CV-251, 2007 U.S. Dist. LEXIS 37112 (W.D. Tex. May 22, 2007) ...................10

*Parus Holdings Inc. v. Apple, Inc., et al.*,
   19-cv-00432-ADA, Doc. 114 (Feb. 27, 2020) (Albright, J.) ..................................................15

*Sofamor Danek Holdings, Inc. v. U.S. Surgical Corp.*,
   No. 98-2369 GA, 1998 U.S. Dist. LEXIS 21746 (W.D. Tenn. Nov. 16, 1998) .....................10

*TC Heartland LLC v. Kraft Foods Group Brands, LLC*,
   137 S. Ct. 1514 (2017)................................................................................................1, 10

*Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*,
   815 F. Supp. 994 (E.D. Tex. 1993) .....................................................................................5

*Tinnus Enters., LLC v. Telebrands Corp.*,
   No. 6:15-cv-00551, 2015 U.S. Dist. LEXIS 178419 (E.D. Tex. Aug. 31, 2015)............6, 9, 13

*TMI Prods. v. Audiovox Corp.*,
   No. CV 09-1437-JFW, 2009 U.S. Dist. LEXIS 138463 (C.D. Cal. Apr. 29,
   2009) ......................................................................................................................................6

*VLSI Tech., LLC v. Intel Corp.*,
   No. 19-cv-000254-ADA, 2019 U.S. Dist. LEXIS 155287 (W.D. Tex. Aug. 6,
   2019) (Albright, J.) ..........................................................................................................11, 15

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) .................................................................................................9

*XY, LLC v. Trans Ova Genetics, LC*,
   No. W-16-CA-00447-RP, 2017 U.S. Dist. LEXIS 218449 (W.D. Tex. Apr. 5,
   2017) ....................................................................................................................................14

## I.        INTRODUCTION

Transfer of this case is unwarranted for multiple reasons. <u>First</u>, venue is proper in this judicial district because SK hynix has a physical presence here, as required by *TC Heartland*. By contrast, Netlist could not have filed this case in the Central District of California ("CDCA"), as SK hynix has no presence there. SK hynix ignores this threshold issue. The Court should defer to Netlist's choice of this forum without compelling circumstances, which are absent in this case. SK hynix has not demonstrated, and cannot demonstrate, that CDCA is a clearly more convenient forum.  <u>Second</u>, SK hynix's reliance on the "first-to-file" rule is misplaced. This case involves patents that Netlist has never asserted in any previously filed litigation. While the patents asserted here are in the same patent family as earlier cases in California, that fact, standing alone, does not trigger the rule. Tellingly, SK hynix cites no case in which a court has invoked the Fifth Circuit first-to-file rule in a case involving different asserted patents. Nor can it. District courts routinely decline to apply the first-to-file rule to a second-filed case involving different patents—even where those patents are in the same patent family as patents asserted in a first-filed case.

SK hynix attempts to buttress its "first-to-file" argument by incorrectly suggesting that the cases filed in California have been "heavily litigated" before Judge Staton. That is simply not true. Both cases were stayed over two years ago, and the matters never materially progressed beyond a responsive pleading, initial disclosures, and work by the parties in 2017 regarding claim construction. Judge Staton never resolved a discovery dispute, never addressed or decided any substantive issues, and never construed any patent terms. And for more than the last two years, her involvement has been limited to granting the parties' periodic joint requests to continue the stay in favor of litigating elsewhere. Moreover, as the result of PTAB proceedings, it is at best uncertain whether any claims will ever move forward in California. There is no reasonable likelihood for judicial inefficiency or duplication of effort.

In sum, the "first-to-file" rule does not apply here, and no public or private factors suggest, let alone clearly establish, that CDCA would be a more convenient forum. Nor do any facts or circumstances suggest or establish, that the present action will not proceed efficiently and cost-effectively in Waco, without any undue difficulties that could be avoided by litigating elsewhere. The Court should deny the motion, and the case should proceed in Waco.

## II.      FACTUAL BACKGROUND

This is the first time Netlist has asserted United States Patent Nos. 9,858,218 and 10,474,595 (the "Asserted Patents") against SK hynix. Netlist previously asserted <u>different</u> patents against SK hynix in two cases in the Central District of California.[1] But those cases were stayed years ago and the parties did not, in fact, litigate them in any meaningful way. Instead, the parties litigated those different patents in two ITC investigations, No. 337-TA-1023 ("*ITC I*") filed in 2016 and No. 337-TA-1089 ("*ITC II*") filed in 2017. In *ITC I*, Netlist asserted U.S. Patent No. 8,489,837 ("the '837 patent"), which is related to the patents asserted here. Mot. at 2. In *ITC II*, Netlist asserted U.S. Patent No. 9,535,623 ("the '623 patent"), a continuation of the '837 patent, also related to the patents asserted here. Mot. at 4. In February 2018, the California court stayed those cases entirely. Mot. at 5; Mot. Ex. 33. They remain stayed to this day.

Contrary to SK hynix's suggestion, the California cases were not "heavily litigated." Mot. at 3. In the brief period those cases were active, the California court did not construe the claims, did not resolve any discovery disputes, and did not issue summary judgment rulings. *See* Declaration of A. DeVoogd ("DeVoogd Decl.") at ¶ 7. Rather, as SK hynix concedes, the judge in California entered a typical discovery and protective order (Mot. at 3; Mot. Exs. 18-20), and both

---

[1] In 2016, Netlist sued SK hynix in Case No. 8:16-CV-01605 ("*California I*") and, in 2017, Netlist sued SK hynix in Case No. 8:17-CV-01030 ("*California II*") (jointly, the "California Actions").

parties submitted basic infringement and invalidity disclosures relying exclusively on information exchanged in the ITC. *See* DeVoogd Decl. at ¶ 6. The parties exchanged claim construction briefs, but the *California I* case was stayed before the *Markman* hearing after the PTAB instituted trial on SK hynix's IPR petitions.[2] After entering the stay in *California I*, Judge Staton ordered periodic reports on the status of litigation elsewhere. In all such reports, SK hynix has agreed that the parties should not litigate in California, including in the most recent status report, submitted after SK hynix filed this Motion.[3] *See id.*, Ex. 1 (May 8, 2020 Status Report).

Contrary to SK hynix's suggestion (Mot. at 4), the vast bulk of the discovery between the parties occurred in the ITC, not in California. For example, the parties produced a combined 416,871 documents (totaling over 4.2 million pages) in the ITC, compared to just 3,122 documents in California—less than 1% of the documents exchanged in the ITC. *See* DeVoogd Decl. at ¶ 6. The parties exchanged 381 interrogatories in the ITC actions, compared to just 23 interrogatories in California. *See id*. And in response to these few discovery requests in California, the parties simply cross-referenced information exchanged in other proceedings. *See id*. As for depositions, only a handful of the 46 deposed witnesses were noticed for deposition in the California cases, and even these were each captioned as only being part of *ITC II*. *See* DeVoogd Decl., Exs. 2-11.

In its Motion, SK hynix also tries to use a discovery cross-use agreement between the parties to suggest that all the discovery exchanged in the ITC somehow also occurred in California. Mot. at 4. SK hynix cannot have it both ways. If the cross-use agreement means that discovery made in *ITC I* and *II* is relevant to *California I* or *II,* then it will be relevant to this case as well.

---

[2] Judge Staton also issued orders disqualifying Netlist's original counsel and striking extrinsic evidence, neither of which concerned the merits of Netlist's patents. *See* DeVoogd Decl. at ¶ 6.
[3] This report notes that PTAB invalidated the '837 patent, and the Federal Circuit affirmed, so the '837 patent was never litigated in California—and it never will be. It also shows that Netlist is also appealing a PTAB decision invalidating the '623 patent. *See* DeVoogd Decl., Ex. 3.

Moreover, SK hynix incorrectly states that "neither the parties nor the evidence are connected to this District." Mot. at 6-7. That is not true. For example, as alleged in the Complaint, and undisputed by SK hynix, SK hynix employs personnel in this District with training, expertise, and responsibilities relating to the accused products. *See* Dkt. No. 1 at ¶¶ 11-12. SK hynix also has commercial space to house these personnel, and works in this District to maintain close business relationships, including with one of its largest customers in the United States based in this District. *Id*. For its part, Netlist personnel frequently travel to this District to maintain and develop its own business relationships with multiple companies resident here. *See* Declaration of Gail Sasaki at ¶ 5. In the last 12 months, for example, ten Netlist personnel traveled to this District ten different times, staying at least 32 days. *See id.* Further underscoring Netlist's contacts with this District is the portion of Netlist's 2019 sales into this District. *See id*. at ¶¶ 7-8.

## III.   ARGUMENT

On the facts as they are, rather than as SK hynix has mischaracterized them, no basis exists to apply the "first-to-file" rule and transfer the present case to CDCA where venue is not proper. Moreover, under a §1404 analysis, no established private or public factor justifies or supports a conclusion that CDCA is a clearly more convenient forum than Waco.

### A.    The First-To-File Rule Does Not Apply Here, Because Netlist Is Asserting Different Patents Than Those Asserted In The California Cases

Contrary to SK hynix's primary argument, the first-to-file rule does not require transfer to CDCA. The first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases." *In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016) (emphasis added). Those circumstances do not exist here. The first-to file rule exists to serve the general principle to avoid duplicative litigation and inconsistent adjudications amongst various district courts. *Document Generation*

*Corp. v. Allscripts*, No. 6:08-CV-479, 2009 U.S. Dist. LEXIS 149038, at *15-20 (E.D. Tex. May 19, 2009). Therefore, "[i]n determining whether to apply the first-to-file rule to an action, [the second court] must resolve two questions: 1) are the two pending actions so duplicative or involve substantially similar issues that one court should decide the subject matter of both actions; and 2) which of the two courts should take the case?" *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) (citation omitted).[4] Only where the overlap between the subject cases is nearly complete, transfer is appropriate. *Telebrands*, 824 F.3d at 984 (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985).

Where, as here, the cases do not overlap in such a "nearly complete" manner, the second court has considerable discretion and may readily retain the case. *Telebrands*, 824 F.3d at 984 (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)). This decision is case-specific and based on factors such as: (1) the extent of the overlap; (2) the likelihood of conflicts; and (3) the comparative advantage and interest each forum has in resolving the dispute. *Id.* (citation omitted). These factors encompass the principles of comity and sound judicial administration on which the first-to-file rule rests. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). All of these factors argue for the Court to retain the present action.

1.    The California Actions Are Neither Duplicative Nor Substantially Similar

Because the Asserted Patents in this case are not the same as the patents asserted in California, the two cases do not involve "substantially similar" issues requiring transfer. *Datamize*, 2004 U.S. Dist. LEXIS 29100, at *10-11 (under first-to-file rule, moving party must prove that the two pending actions are so duplicative, or involve substantially similar issues that they substantially overlap, such that one court should decide both actions). This fact alone is dispositive.

---

[4] Netlist agrees that this Court should apply the Fifth Circuit's version of the "first-to-file" rule. *See, e.g.*, *In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016).

The present case involves different patents with different claims, different claim construction issues, and different infringement and validity issues. And because the California cases are stayed, there is zero overlap in active litigation between the two venues.

SK hynix strains to identify factual similarities between this case and the stayed California cases, but nothing SK hynix points to comes anywhere close to the level of "substantial overlap" required to invoke the first-to-file rule. The Fifth Circuit requires far more than the same parties and same accused products to do so. *See, e.g.*, *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-00551, 2015 U.S. Dist. LEXIS 178419, at *11 (E.D. Tex. Aug. 31, 2015) ("Cases involving the same parties and accused products will naturally have some potential for overlap; the question … is whether the overlapping issues are substantial, such that interests of justice would <u>require</u> dismissal or transfer.") (emphasis added) (citations omitted). The fact that asserted patents share a similar specification is not "substantial overlap" either, because the scope of a patent is governed by its claims, not its specification. *See, e.g.*, *Document Generation Corp.*, 2009 U.S. Dist. LEXIS 149038, at *15-20 (rejecting motion to transfer continuation patents with different claims); *Datamize*, 2004 U.S. Dist. LEXIS 29100 at *17-18 (related patents sharing the same specification are nonetheless different patents that merit independent construction). Because the patent claims in this case are different from those in California, the first-to-file rule cannot apply.

The cases SK hynix cites are readily distinguishable. These involve circumstances, for example, where the actions were filed close in time and where duplication was inevitable. In *Integra Techs. Int'l, Inc. v. Durst Image Tech. US LLC*, No. A-09-CA-143-SS, 2009 U.S. Dist. LEXIS 135920, at *3 (W.D. Tex. Aug. 20, 2009), the court transferred a second-filed case filed shortly after the first, finding that discovery questions likely would overlap. Similarly, in *TMI Prods. v. Audiovox Corp.*, No. CV 09-1437-JFW (JCx), 2009 U.S. Dist. LEXIS 138463, at *7-8

(C.D. Cal. Apr. 29, 2009), the district court transferred a case filed just two months after the first case under the Ninth Circuit's more lenient first-to-file rule,[5] to avoid inconsistent rulings due to similar evidentiary and discovery issues. And in *Hunter Douglas, Inc. v. Nien Made Enter. Co.*, 2016 WL 6822310 at \*9 (C.D. Cal. May 23, 2016), also applying the more lenient Ninth Circuit analysis, the court transferred the case because the first court was "intimately involved" in similar litigation with similar parties and related patents.

Here, in contrast, Netlist filed this case long after the California cases on different patents were stayed—and it is not clear those cases will ever proceed. Moreover, contrary to SK hynix's struggle to demonstrate otherwise, the court in CDCA has not been "intimately involved" in the technology, relevant discovery, or anything else that could justify transfer. There is no reasonable allegation or possibility that duplication will occur, concerning discovery disputes or otherwise. There is no risk of inconsistent adjudications. This simple fact alone dooms SK hynix's motion.

2.   The First-To-File Rule Does Not Apply, Because Transfer Would Not Serve Judicial Efficiency

The first-to-file rule also does not apply here because transfer to California would not serve judicial efficiency. The rule is designed "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues[.]" *Cadle*, 174 F.3d at 603-604 (quoting *West Gulf*, 751 F.2d at 729). No such concerns exist here. There is no real potential for conflict between the actions, which involve different claims on

---

[5] The Ninth Circuit adheres to a more lenient first-to-file rule, considering just three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991). Even under the Ninth Circuit's more lenient standard, SK hynix still could not show that transfer is warranted, because Judge Staton was not "intimately involved" in the California cases. *Cf. Hunter Douglas, Inc. v. Nien Made Enter. Co.*, 2016 WL 6822310 at \*9 (C.D. Cal. May 23, 2016) (applying Ninth Circuit analysis, transferring case because first court was "intimately involved" in similar litigation with similar parties and related patents).

different patents. Courts routinely decline to apply the first-to-file rule if the cases involve different patents, even if those patents are related. *See, e.g.*, *Candela Corp. v. Palomar Med. Techs., Inc.*, No. 9:06-CV-277, 2007 U.S. Dist. LEXIS 19994, at *5-6 (E.D. Tex. Feb. 22, 2007) (denying motion to transfer for cases involved related patents); *Cummins-Allison Corp. v. Glory Ltd.*, No. 2-03-CV-358, 2004 U.S. Dist. LEXIS 13839, at *9 (E.D. Tex. May 26, 2004) (same); *see also In re ASM Int'l*, N.V., 774 F. App'x 650, 652 (Fed. Cir. 2019) (denying petition for a writ of *mandamus* requesting transfer based on first-to-file rule as the second-filed case involved different patents and different claims); *Garmin Ltd. v. TomTom, Inc.*, No. 2:06-CV-338, 2007 U.S. Dist. LEXIS 15214, at *6-7 (E.D. Tex. Mar. 5, 2007) (declining to apply the first-filed rule because the two actions involved separate patents and the cases were at different stages of litigation).

Further, contrary to SK hynix's assertion, Judge Staton in California has had very little active involvement in the cases before her. She has not been presented with, let alone decided, any discover matter or substantive issues in the cases before her. This is because, in the United States, the parties have <u>only</u> litigated Netlist's patent infringement claims and SK hynix's FRAND defenses in the ITC.  Simply put, Judge Staton has not been required to do anything that could possibly create the risk of inconsistent adjudications or duplication of judicial work. SK hynix therefore cannot credibly argue that the California Actions have been "heavily litigated." To the contrary, SK hynix and Netlist jointly requested that Judge Staton stay the California Actions precisely so that the parties could litigate their dispute in the ITC. *See* Mot. at Ex. 33 (staying case on joint stipulation). Not surprisingly, therefore, the discovery completed to-date was undertaken as part of the ITC investigation, not to further the California Actions. The parties presented all discovery matters and disputes to Administrative Law Judges at the ITC. This discovery is only relevant to the California Actions because the parties entered into a cross-use agreement permitting

the use of ITC discovery in the California Actions—if the stay were ever to be lifted and the matters were to proceed. Even the very few depositions that SK hynix claims were taken in the district court litigation were all captioned as, and directly relevant to, *ITC II. See* DeVoogd Decl. at ¶ 5. The simple reality is that the California Actions never meaningfully progressed beyond the responsive pleadings stage and some claim construction work by the parties. They have required virtually none of Judge Staton's time, sitting dormant on her administrative docket for years.

Accordingly, application of the first-to-file rule here would be improper in light of Judge Staton's limited involvement with the case and technology. *See j2 Glob. Commun's., Inc. v. Protus IP Sols., Inc.*, No. 6:08-CV-211, 2008 U.S. Dist. LEXIS 103609, at *21 (E.D. Tex. Dec. 23, 2008) (refusing to transfer when the first court never issued a claim construction order and had limited involvement with the technology). Even by SK hynix's reckoning, Judge Staton's involvement is limited to three early stage events years ago. She disqualified Netlist's original counsel before a responsive pleading was filed. She issued an order striking extrinsic claim construction evidence (prior to a *Markman* hearing that never happened on a patent that can no longer be asserted). And she stayed the case. That is not enough; it demonstrates no involvement in the substantive matters of the case and no immersion in the underlying technology. The asserted claims are different, and no possibility exists for duplication of effort among courts. The Court should deny the Motion.

3.      Transfer Will Not Result In Any Efficiencies

Notably, SK hynix does not ask to consolidate the present case with the California Actions because, apart from those actions involving different patents and claims, there is no certainty that the California Actions will ever be litigated. The first-to-file rule should only apply "where the issues presented can be resolved in an earlier-filed action pending in another district court." *West Gulf*, 751 F.2d, at 729-30. Courts routinely refuse to apply the first-to-file rule if consolidation is not requested, as failing to do so negates the purpose of the rule. *See, e.g.*, *Tinnus Enters., LLC*,

9

2015 U.S. Dist. LEXIS 178419, at *15-17; *Sofamor Danek Holdings, Inc. v. U.S. Surgical Corp.*, No. 98-2369 GA, 1998 U.S. Dist. LEXIS 21746 (W.D. Tenn. Nov. 16, 1998) (denying motion to transfer to an earlier filed action involving a related patent, with similar parties and technology).

All California litigation has been stayed for over two years. Only ten days ago, the parties submitted their eighth joint request to keep the California Actions stayed. *See* DeVoogd Decl., Ex. 1. No valid or enforceable patent claims remain in *California I.* Moreover, a valid, enforceable patent claim will only exist in *California II* action if Netlist successfully appeals the PTAB's Final Written Decision concerning the '623 patent. That appeal is currently pending, and given the Federal Circuit's recent decision in *Arthrex*, it may not finally resolve for the next 18-24 months. Judge Staton has also had no involvement with SK hynix's RAND counterclaims.

Netlist filed here, where venue is proper, and Netlist's "privilege to choose, or not be ousted from his chosen forum[,] is highly esteemed." *MDI, Inc. v. Minh Phan*, No. SA-07-CV-251, 2007 U.S. Dist. LEXIS 37112, at *11 (W.D. Tex. May 22, 2007) (quotation omitted). The principles required to invoke the first-to-file rule are absent here, and do not justify transfer.

### B.   Venue in the Central District of California Is Improper, Because SK hynix Has No Regular and Established Place of Business There

SK hynix fails to mention that Netlist could not have filed in CDCA under the patent venue rules, which require that a defendant have a regular and established place of business in the subject venue. *TC Heartland LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017). This also guts the motion. To Netlist's knowledge, SK hynix has no presence whatsoever in CDCA. In other words, SK hynix seeks transfer to a venue in which it is otherwise immune from a patent infringement suit under the Supreme Court's *TC Heartland* precedent. This Court should deny the requested relief for this reason alone.

## C.     The Central District of California Is Not "Clearly" More Convenient

Even if venue were proper in CDCA (it is not), SK hynix has also failed to satisfy its heavy burden of showing that that District is a "<u>clearly</u> more convenient" venue for this dispute. *See Humble Oil & Refinery Co. v. Bell Marine Servs. Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) (noting that movant bears the burden to demonstrate good cause for transfer). This burden "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). "Thus, when the transferee venue is not <u>clearly</u> more convenient … the plaintiff's choice should be respected." *Id.* (emphasis added); *see VLSI Tech., LLC v. Intel Corp.,* No. 19-cv-000254-ADA, 2019 U.S. Dist. LEXIS 155287 (W.D. Tex. Aug. 6, 2019) (Albright, J.) (denying motion to transfer and emphasizing importance of plaintiff's choice of forum). The Fifth Circuit has adopted the *Gilbert* private and public interest factors to determine whether transfer is appropriate under § 1404(a).[6] In applying these factors, the court enjoys considerable discretion and assesses the case "on an 'individualized, case-by-case consideration of convenience and fairness.'" *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (quotation omitted). SK hynix never even acknowledges the "<u>clearly</u> more convenient" requirement, and fails to provide a credible analysis of the *Gilbert* factors.

### 1.     The Private Interest Factors Do Not Clearly Support Transfer

<u>Factor 1</u>: The relative ease of access to sources of proof favor WDTX. As SK hynix acknowledges, in patent infringement cases, "the bulk of the relevant evidence usually comes from

---

[6] The *Gilbert* private interest factors are: (1) the relative ease of access to source of proof (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The *Gilbert* public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law.

the defendant," and "the place where the defendant's documents are kept weighs in favor of transfer to that location." ECF No. 26 at 12; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, SK hynix admits that location is South Korea. Mot. at 12. It may also be SK hynix's office in Austin, where personnel provide extensive testing, certification, and qualification of the accused products for one of its largest American customers. *See* ECF No. 1 at ¶ 12; DeVoogd Decl., Ex. 12 (LinkedIn profiles). It is certainly <u>not</u> the Central District of California, as SK hynix has no presence there. What is more, the parties have already conducted extensive discovery in the ITC actions, and the parties' prior cross-use agreements vastly reduces the weight of this factor. And if any further discovery is necessary, as this Court has recognized, access to documents located on a server can be near instantaneous. *Fintiv, Inc. v. Apple, Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *12 (W.D. Tex. Sept. 10, 2019).

<u>Factor 2</u>: At best for SK hynix, the availability of compulsory process in this district is neutral. It argues that several non-party witnesses reside in California, but fails to explain how this factor favors transfer and fails to show that any potential witness is unwilling to testify. "When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted). In fact, Dr. Hyun Lee and Mr. Noel Whitley both voluntarily participated in the ITC actions. SK hynix also points to a patent prosecution attorney and witnesses for suppliers of components of the accused products. However, SK hynix does not argue that these witnesses live within 100 miles of CDCA and merely notes that these witnesses, who may not testify at trial, live in the state of California. Certainly, no such alleged witness availability issues arose in or impaired the ITC proceedings.

Factor 3: The cost of attendance for willing witnesses weighs against transfer. While the convenience of witnesses is an important factor, the convenience of non-party witnesses carries the most weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs.*, No. A-09-CA-773 LY, 2010 U.S. Dist. LEXIS 27903, at *11 (W.D. Tex. Mar. 23, 2010). In addition, "long lists of potential party and non-party witnesses do not affect the Court's analysis for this factor." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *18 ("[T]he Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial."). In its motion, SK hynix only argues that travel to CDCA would be more convenient for party employees and witnesses. ECF No. 26 at 13-14. SK hynix does not even address the cost of attendance for any non-party witnesses. *Id.* Thus, this factor weighs against transfer, as courts rightly accord little weight to such vague and general statements. *See ADS Sec. L.P.*, 2010 U.S. Dist. LEXIS 27903, at *11-13.

Factor 4: No practical problems for an easy, expeditious, and inexpensive case exist justifying transfer. Again, the California Actions have been stayed for over two years, and never substantively progressed. Judge Staton did not issue any substantive or dispositive rulings. As a result, no practical impediments exist that would make it more difficult for the parties to proceed in this Court expediently, cost-effectively, and without undue complications. The California actions went dormant well in advance of the close of fact discovery, before any claim construction order, and before any other dispositive rulings. "Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice." *Tinnus Enters.*, 2015 U.S. Dist. LEXIS 178419, at *23. Further, the cases SK hynix cites are inapposite. First, the court in *Affinity Labs* transferred the case to NDCA in part because the other case still had pending and <u>active</u> claims involving patents related to the asserted patents. *Affinity Labs of Texas, LLC v. Samsung Elecs. Co.*, No. 6:13-cv-364, 2014 WL 12570501,

at *3 (W.D. Tex. June 10, 2014). Here, PTAB invalidated all patents asserted in California and, for at least the past two years, the parties have agreed not to litigate there. Second, in *XY*, the earlier lawsuit proceeded through claim construction and a three-week jury trial—and a forum selection clause mandated transfer. *XY, LLC v. Trans Ova Genetics, LC,* No. W-16-CA-00447-RP, 2017 U.S. Dist. LEXIS 218449, at *2 (W.D. Tex. Apr. 5, 2017). This case is very different, as already demonstrated. SK hynix also baselessly speculates as to this factor that Netlist's intention in filing in this District was to create a "wasteful duplication of efforts" or avoid "adverse rulings." (Mot. at 12). But there is nothing to duplicate, and no ruling in California is relevant to the merits here.

### 2.      The Public Interest Factors Do Not Clearly Support Transfer

Factor 1: Administrative difficulties do not favor transfer because, at best for SK hynix, CDCA has a similar time to trial. This factor focuses on court congestion, and the relevant inquiry is how quickly the court brings the case to trial and resolves the action. *Genentech*, 566 F.3d at 1347. This Court's default is trial less than 18 months after the CMC, and has set most, if not all, patent cases for trial within ~18 months after filing. *EROAD Ltd. v. PerDiemCo LLC*, No. 6:19-CV-00026-ADA (W.D. Tex. Sept. 19, 2019). As a result, a likely time to trial is 22.5 months or earlier. CDCA's similar time to trial of 22.3 months does nothing to support transfer.

Factor 2: This district's localized interests in the events that gave rise to the suit argue against transfer. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). For example, personnel in SK hynix's Austin office provide "extensive testing, certification, and qualification of the accused LRDIMM and RDIMM memory modules for specific use" in the products of one of SK hynix's largest American customers resident in this District. ECF No. 1 at ¶ 12. SK hynix ignores these allegations and does not meaningfully contest them. *See* ECF No. 26 at 14. Again, SK hynix cites inapplicable precedent. In *Dataquill*, the plaintiff unpersuasively argued that sales of iPhones to Austin residents alone created a localized interest. *Dataquill, Ltd. v. Apple Inc.*, No.

A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410, at *14-15 (W.D. Tex. June 13, 2014). Here, SK hynix's connection to the district is much more than merely selling to consumers that live in the district. Its Austin employees work to optimize the accused products specifically for a massive technology company resident in this District. *See* DeVoogd Decl., Ex. 12 (LinkedIn profiles). As a result, the parties' substantial connections to this district render this factor at least neutral.

Factors 3 and 4: The other public interest factors are neutral because federal patent law governs here. *See VLSI Tech., LLC v. Intel Corp.,* No. 19-cv-000254-ADA, 2019 U.S. Dist. LEXIS 155287, at *29 (W.D. Tex. Aug. 6, 2019). None of the public interest factors favor transfer, and SK hynix has not come close to showing that CDCA is "clearly" more convenient than WDTX.[7]

### D.    This Case Should Remain in the Waco Division, Netlist's Choice of Forum

It is both proper and appropriate for the present case to remain in the Waco Division. If venue is proper in WDTX, venue is proper in any division in the district. *Chapman v. Dell, Inc*., No. 09-CV-7, 2009 U.S. Dist. LEXIS 50654, at *6-7 (W.D. Tex. Apr. 15, 2009). SK hynix has not met its burden to prove that the Austin Division is clearly more convenient than Waco. If anything, SK hynix's willingness to litigate in Austin shows that its motion to transfer to California is meritless. Regardless, SK hynix's sole argument is that its facility is physically located in Austin. That fact, standing alone, is not enough.

### IV.    CONCLUSION

For these reasons, Netlist asks that the Court deny SK hynix's Motion in its entirety.

---

[7] Should the Court conclude it needs more information about the nature, extent, and materiality of SK hynix's contacts with this District, Netlist requests leave to conduct limited venue-related discovery. *See Parus Holdings Inc. v. Apple, Inc., et al.*, 19-cv-00432-ADA, Doc. 114 (lead case) (Feb. 27, 2020) (ordering venue discovery) (Albright, J.). This would take the form of up to 10 requests for production of documents and a single 30(b)(6) deposition of a SK hynix representative regarding its significant contacts with the District. That said, because SK hynix is nowhere close to satisfying its burden to justify transfer to California, such discovery should be unnecessary.

Dated: May 18, 2020

/s/ *Andrew H. DeVoogd*
James M. Wodarski
  (*pro hac vice pending*)
  Massachusetts BBO No. 627036
  E-mail: JMWodarski@mintz.com
Andrew H. DeVoogd
  (Admitted to practice in WDTX)
  Massachusetts BBO No. 670203
  E-mail: AHDeVoogd@mintz.com
Matthew S. Galica
  (*pro hac vice pending*)
  Massachusetts BBO No. 696916
  E-mail: MSGalica@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND
  POPEO P.C.
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241

J. Stephen Ravel
Texas State Bar No. 16584975
Email: steve.ravel@kellyhart.com
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429

*Attorneys for Plaintiff Netlist Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been served on May 18, 2020 to all counsel of record who are deemed to have consented to

electronic service via the Court's CM/ECF system.

/s/ *Andrew DeVoogd*
Andrew DeVoogd
