

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **NETLIST, INC.,** | § | |
| *Plaintiff* | § | |
| | § | **6:20-CV-00194-ADA** |
| **-vs-** | § | |
| | § | |
| **SK HYNIX INC.,  SK HYNIX AMERICA INC.,** | § | |
| *Defendants* | § | |

| | | |
|---|---|---|
| **NETLIST, INC.,** | § | |
| *Plaintiff* | § | |
| | § | **6:20-CV-00525-ADA** |
| **-vs-** | § | |
| | § | |
| **SK HYNIX INC.,  SK HYNIX AMERICA INC.,** | § | |
| *Defendants* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants SK hynix Inc. and SK hynix America Inc.' ("Hynix" or "Defendants") Motion to Transfer Venue to the Central District of California ("CDCA") or alternatively to the Austin Division of the Western District of Texas (the "Motion to Transfer").[1] ECF #26.  Having considered the parties' briefing, the relevant facts and law, and the parties' oral arguments at the hearing conducted on February 2, 2021, the Court is of the opinion that the Motion to Transfer should be **DENIED**.

# BACKGROUND FACTS

On March 17, 2020, Plaintiff Netlist, Inc. ("Netlist" or "Plaintiff") filed a first suit in this Court (No. 6:20-CV-00194) ("the -194 action") accusing Hynix of infringing U.S. Patent Nos.

---

[1] Hynix's Motion to Transfer was filed under Case No. 6:20-CV-00194, but after Case No. 6:20-CV-00525 was filed and consolidated with the -194 action, the parties subsequently stipulated that the Motion to Transfer should apply to both the -194 and -525 actions. As such, this Order also applies to both actions.

9,858,218 ("the '218 patent") and 10,474,595 ("the '595 patent"). ECF #1.  The '595 patent is a continuation of the '218 patent.  Almost two months later, Hynix filed the Motion to Transfer venue to CDCA under the first-to-file rule or alternatively under 28 U.S. Code § 1404(a), or alternatively transfer the -194 action to the Austin Division of this District. ECF #26.

Hynix's transfer request under the first-to-file rule was based on two cases Netlist had previously filed in California. In 2016, Netlist sued Hynix in CDCA (No. 8:16-CV-01605, before Judge Staton) ("California I") and the U.S. International Trade Commission (No. 337-TA-1023) ("ITC I"), asserting, among others, U.S. Patent No. 8,489,837 ("the '837 patent"). *Id*.  Both the '218 and '595 patents are continuations from the '837 patent.  Netlist sued Hynix a second time in June 2017 in CDCA (No. 8:17-CV-01030) ("California II") and then a second time in the ITC in October 2017 (No. 337-TA-1089) ("ITC II"), asserting, among others, U.S. Patent No. 9,535,623 ("the '623 patent"). *Id*.  The '623 patent is also a continuation of the '837 patent. Several months later, in February 2018, Judge Staton stayed both California I and II actions, which remain stayed until today.  Before the two California actions were stayed, they were largely on auto-pilot: the parties negotiated discovery and protective orders, exchanged infringement and invalidity contentions, and exchanged claim construction briefs. ECF #26, 27. The California court's only involvement in those two cases includes holding a hearing to disqualify Netlist's initial counsel, granting a motion to strike portions of expert declarations in support of opening claim construction brief, and requesting the parties to file periodic status reports after the stay. *Id*.

Both the '837 and '623 patents in the California I and II actions have been invalidated by the Patent Trial and Appeal Board ("PTAB") through *inter partes* review ("IPR") proceedings. The PTAB instituted IPR review of the '837 patent in May 2017 and entered a final written

decision in May 2018 invalidating all challenged claims. *See* IPR2017-00548. Netlist did not appeal the PTAB's decision invalidating the '837 patent. Similarly, the PTAB instituted IPR review of the '623 patent in May 2018 and entered a final written decision in March 2019 invalidating all challenged claims. *See* IPR2018-00303. On May 22, 2019, Netlist filed a notice of appeal of the PTAB's decision regarding the '623 patent, which is still pending.

In the -194 action in this District, the Court held an initial case management conference on June 11, 2020. ECF #36. Shortly afterwards, on June 15, 2020, Netlist sued Hynix a second time in this Court (No. 6:20-cv-00525-ADA) ("the -525 action"), asserting U.S. Patent No. 10,217,523 ("the '523 patent"). The '523 patent is not related to the '218 or '595 patents previously asserted by Netlist in the -194 action, or any of the patents asserted in the California I and II actions. Four days later, on June 19, 2020, this Court held a second scheduling conference, and subsequently entered a scheduling order on July 8, 2020, setting Markman hearing for the -194 action for December 8, 2020 and trial date for October 16, 2021. ECF #39, 46. Based on the scheduling order, the parties completed their claim construction briefing for the -194 action in November 2020. ECF #53, 58, 61, 63, 66, 71.

Meanwhile, in the -525 action, the Court held a case management conference on October 16, 2020, where the Court consolidated the -194 action and -525 action upon Hynix's request. -525 action, ECF #23. Also upon Hynix's request, the Court agreed to delay the Markman hearing for four months in the consolidated case, re-setting it from December 8, 2020 to March 19, 2021, and re-setting the trial date for the consolidated case to December 6, 2021. -525 action, ECF #23, 28; -194 action, ECF #65, 73. Fact discovery for the consolidated case opened immediately after the conference, starting on October 16, 2020. Several days later, the parties

stipulated on October 21, 2020 that Hynix's Motion to Transfer shall apply to both the -194 and -525 actions. -525 action, ECF #24.

# DISCUSSION

## I. First-To-File Rule

### A. Standards

The first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases." *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir.1985); *Save Power*, 121 F.3d at 950. "Where the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues." *In re Telebrands*, 773 F. App'x at 602 (citing *West Gulf*, 751 F.2d at 730).

However, where the overlap between the two cases is not "complete or nearly complete," the "second district court has considerably more discretion." *Id.*; *see also In re ASM Int'l, N.V.*, 774 F. App'x 650, 652 (Fed. Cir. 2019). Indeed, "[t]he most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltrade, Inc., v. Uniweld Products, Inc.*, 946 F.2d 622, 625, 628 (9th Cir. 1991) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). In such cases, the second district court's "judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951; *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). "The crucial

inquiry is one of 'substantial overlap.'" *Save Power*, 121 F.3d at 950 (citations omitted); *Sweet Little Mexico*, 665 F.3d at 678.

### B.      Analysis

The overlap between the present WDTX cases and the CDCA cases is far from "complete or nearly complete" to require a transfer under the first-to-file rule.[2] Although the '218 and '595 patents asserted in the -194 action are from the same family as the '837 and '623 patents asserted in the California cases, the present case involves different asserted claims from different patents, and therefore different claim construction issues and different infringement and validity issues. In addition, the -525 action, which is consolidated with the -194 action, involves a patent that is unrelated to any of those asserted in the California cases.   Without a "complete or nearly complete" overlap between the WDTX cases and the CDCA cases, the Court thus exercises its discretion and analyzes the relevant factors in determining whether the first-to-file rule applies.

### 1.      "extent of overlap"

Hynix contends that the first-to-file rule applies here because the patents asserted in the present actions are from the same family as those asserted in the California actions and as a result, the claim construction, infringement, and invalidity analysis across all these actions are likely to be nearly identical. ECF #26 at 7-9.   However, this alone does not justify a transfer under the first-to file rule.   The -194 action involves different claims from different patents than the two California actions, which therefore requires different claim constructions and different

---

[2] Hynix contends that the Court should transfer the cases to CDCA pursuant to the first-to-file rule or alternatively pursuant to 28 US.C. 1404(a). However, Hynix does not contend that it does not have any presence in CDCA, and the present actions could not have been originally brought in CDCA under the *TC Heartland* patent venue rule. Hynix essentially contends that the first-to-file rule trumps the venue requirements described in Section 1400(b) and *TC Heartland*.  Hynix, however, does not provide any legal authority for that proposition, nor has the Court been able to find one.  In the absence of such legal authority, the Court will not extend the first-to-file rule to trump the venue requirements that the Supreme Court clearly set forth in *TC Heartland*.  But to provide a complete record of this Court's analysis, the Court provides its first-to-file analysis.

infringement and validity contentions.  Transfer under the first-to-file rule requires far more than patents from the same family, same parties, and same accused products. *See, e.g., Tinnus Enterprises, LLC v. Telebrands Corp*., No. 6:15-cv-00551, 2015 WL 11090494, at *4 (E.D. Tex. Aug. 31, 2015), report and recommendation adopted, 2015 WL 11089478 (E.D. Tex. Dec. 2, 2015) ("Cases involving the same parties and accused products will naturally have some potential for overlap; the question … is whether the overlapping issues are substantial, such that interests of justice would require dismissal or transfer."); *Document Generation Corp. v. Allscripts,* No. 6:08-CV-479, 2009 U.S. Dist. LEXIS 149038 at *15-20 (E.D. Tex. May 19, 2009) (rejecting motion to transfer continuation patents with different claims); *Datamize Inc. v. Fid. Brokerage Servs., LLC*, No. 2:03-cv-321-DF, 2004 U.S. Dist. LEXIS 29100 at *17-18 (E.D. Tex. Apr. 22, 2004) (related patents sharing the same specification are nonetheless different patents that merit independent construction). Moreover, the '523 patent asserted in the -525 action, to which action the Motion to Transfer also applies, is totally unrelated to any patent asserted the California actions.

Hynix further contends that the RAND royalty issues in the present actions would also "substantially overlap" with its RAND royalty counterclaims pending in California I and II. ECF #26 at 10.   However, there are no viable RAND claims pending in the California cases concerning the '837 or '623 patent – Hynix is fully aware that the PTAB has already invalidated both patents through IPR proceedings. ECF #26 at 3, 5. By representing that its RAND royalty claims are still pending in the California cases, Hynix seems to suggest that it is willing to take licenses for invalidated patents. The Court is not in a place to judge Hynix's business acumen, but it appears to the Court that Hynix keeps its RAND claims in the California cases solely to gain certain tactical advantages.

In view of the above, the Court finds no "substantial overlap" between the WDTX cases and the CDCA cases.

### 2.        "likelihood of conflict"

There is no real likelihood of conflict or risk of inconsistent adjudications between the WDTX actions and the CDCA actions.  As discussed above, both the '837 and '633 patents in the CDCA actions have been invalidated by the PTAB, and Netlist did not appeal the PTAB's decision invalidating the '837 patent. Thus, a valid, enforceable patent claim will only exist in the California actions if Netlist successfully appeals the PTAB's decision concerning the '623 patent.  However, even if the '623 patent is eventually determined to be valid, the WDTX actions involve different claims from different patent than the CDCA actions: the asserted patent in the -525 action is not related to any of the asserted patents in the CDcA actions, and the asserted patents in the -194 action involves different claims than the '623 patent, although they are from the same family.  Therefore, any likelihood of conflict or risk of inconsistent adjudications would be attenuated, to say the least.

### 3.        "comparative advantage and the interest of each forum in resolving the dispute"

This factor also disfavors transfer under the first-to-file rule.  The CDCA actions have been stayed since February 2018 and they remain stayed today.  The parties have not meaningfully litigated the CDCA actions.  As the parties indicated in their briefing, the California court's only involvement in those two cases includes holding a hearing to disqualify Netlist's initial counsel, granting a motion to strike portions of expert declarations in support of opening claim construction brief, and requesting the parties to file periodic status reports after the stay.  The California court has not been presented with, let alone decided, any discover

matter or substantive issues in the cases.  No Markman hearing has been scheduled and no trial date has been set for the California cases.  Indeed, there is no indication when the stay will be lifted and Hynix has presented no evidence showing that the California court will not also stay the present actions if they were transferred to CDCA.  The California actions were stayed at least partly due to the PTAB's institution of Hynix's IPR petitions. ECF #27 at 3.  However, as Netlist pointed out, the Federal Circuit may not finally resolve its appeal of the PTAB's decision concerning the '623 patent for the next 18-24 months. And Hynix has not indicated that it intends to request the stay be lifted before the final resolution of the appeal concerning the '623 patent.

By contrast, the present case has been actively and substantively litigated in this Court. This Court has held three case management conferences and issued three scheduling orders for this case so far.  The parties completed claim construction briefing for the two asserted patents in the -194 action and have already begun claim construction briefing for the -525 action.  A consolidated Markman hearing has been set for March 19, 2021,[3] and trial has been set for December 6, 2021.  Therefore, this Court has the "comparative advantage and the interest" in resolving the present case than the CDCA court.

In sum, all three factors weigh against transfer under the first-to-file rule.

## II.     Transfer under 28 U.S.C. 1404(a)

### A.     Standards

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  Under §

---

[3] Markman hearing for the -194 action was originally set for December 8, 2020. The hearing was reset for over four months later to March 19, 2021 only upon the request of Hynix to have a consolidated Markman hearing for the -194 and -525 actions.

1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004) [*Volkswagen I*]. If that inquiry is satisfied, the Court determines whether transfer is proper by analyzing and weighing various private and public interest factors. *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Apple Inc*., 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) [*Volkswagen II*] (quoting *Volkswagen I*, 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*  In applying these factors, the court enjoys considerable discretion and assesses the case "on an 'individualized, case-by-case consideration of convenience and fairness.'" *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010) (quotation omitted).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *See id.* Although the plaintiff's choice of forum is not a separate factor entitled

to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### B.     Hynix Has Not Met the Threshold Requirement

Hynix has not met its burden to establish that the present WDTX actions could initially have been brought in CDCA.  Hynix does not dispute that it has no presence in CDCA and therefore Netlist could not have filed the -194 and -525 actions in CDCA under the *TC Heartland* patent venue rule, which requires that a defendant have a regular and established place of business in the subject venue.[4] *TC Heartland LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017). ECF #27 at 10, #31 at 1-2.  Instead, Hynix only contends that the California I and II actions "establish that all parties have 'consented' to venue in that district." ECF #31 at 1-2.  However, there is no evidence showing that the parties have both consented to the CDCA venue the in -194 and -525 actions.  The fact that Netlist objects to Hynix's Motion to Transfer itself indicates that Netlist has not consented to the CDCA venue.  Further, in its briefing, Hynix has cited no mandatory or persuasive authority to show that by filing suits in CDCA pre-*TC Heartland*, Netlist has automatically consented to venue in that district for any following suits involving different patents. As such, Hynix has not shown that it has met the threshold

---

[4] The California I and II cases were filed before the Supreme Court's *TC Heartland* decision, and were therefore not subject to the *TC Heartland* patent venue rule.

requirement for transfer under Section 1404(a), and its transfer request under Section 1404(a) should be denied for this reason alone.

### C.     *Volkswagen* Interest Factors Also Disfavor Transfer

Assuming arguendo that the WDTX actions "might have been brought" in CDCA, Hynix has not shown that CDCA is "clearly more convenient" than WDTX, by weighing the *Volkswagen* public and private factors.

#### 1.     *Volkswagen* Private Interest Factors

##### a.   *"Relative ease of access to sources of proof"*

The first private factor, ease of access to sources of proof, considers "documents and physical evidence" as opposed to witnesses. *See Volkswagen II*, 545 F.3d at 315. Physical location of such sources of proof remains relevant notwithstanding technological advances in data storage, copying, and transmission. *See Volkswagen II*, 545 F.3d at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).   "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345.

SK hynix Inc. is a Korean corporation having a principal place of business in Korea. Hynix admits that the documents related to the research and development, operation, and function (i.e., design documents) of the accused products, as well as marketing, sales and licensing information related thereto, are maintained in Korea. ECF #26 at 6-7.  Sources of proof could also be in this District in Austin, Texas, where SK hynix America has an office or in San Jose, California, where SK hynix America Inc.'s headquarter is located. *Id*.  Hynix does not

contend that any sources of proof is located in CDCA. Therefore, this factor weighs slightly against transfer.

> ### b.   *"Availability of compulsory process to secure the attendance of witnesses"*

Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Federal district courts have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is a party or a party's officer; or . . . [if the person] is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). As party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted).

Hynix points out that Dr. Hyun Lee, the lone inventor of the '837, '623, '218 and '595 patents, is no longer employed by Netlist; nor is Mr. Noel Whitley, Netlist's former chief licensing officer, and are therefore both third-party witnesses. ECF #26 at 13.  Both Dr. Lee and Mr. Whitley are allegedly living in Irvine, California.  However, Hynix fails to show that either potential witness, or any other potential witnesses, are unwilling to testify.  In fact, both Dr. Lee and Mr. Whitley voluntarily participated in the related ITC actions, which occurred in Washington, D.C. Thus, this factor is neutral.

c.   *"Cost of attendance for willing witnesses"*

Courts properly give more weight to the convenience of non-party witnesses than to party witnesses. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs.*, No. A-09-CA-773 LY, 2010 U.S. Dist. LEXIS 27903, at *11 (W.D. Tex. Mar. 23, 2010); *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012).

Hynix has not identified any non-party witnesses, but points out that it is easier for its party witness in Korea travel to CDCA than to WDTX. However, the Court does not find that flying from Korea to the Los Angeles airport and then driving to Santa Ana (where the California cases were filed) costs less than flying from Korea to the Dallas-Fort Worth airport and then driving to Waco. Similarly, the Court does not find that it would cost more for any Hynix's party witnesses to travel from San Jose to Santa Ana than to Waco. If anything, the hotels in Waco are cheaper on average than in Santa Ana. Hynix also contents that Netlists is headquartered in Irvine, California, and thus it would cost less for Netlist's party witnesses to travel to the CDCA court. However, when Netlist filed its actions in this Court, it has already taken consideration of such potential costs. Therefore, the Court finds that this factor is neutral.

d.   *"all other practical problems that make trial of a case easy, expeditious and inexpensive"*

The Court finds this factor weighs against transfer. As discussed above, both the '837 and '623 patents have been invalidated by the PTAB, and Netlist has only appealed the decision concerning the '623 patent. Thus, it is very likely that those two patents, which are the main basis of Hynix's Motion to Transfer, will not be litigated in CDCA at all.  Further, the parties have not meaningfully and substantively litigated the CDCA actions, where the court's only involvement in those cases was holding a hearing to disqualify counsel, striking portions of expert declarations, and requesting the parties to file status reports after stay. The California

cases have been stayed three years since February 2018, and there is no evidence when the stay will be lifted in the near future.  Further, Hynix has presented no evidence showing that the California court will not also stay the present actions if they were transferred to CDCA.

On the other hand, the parties have been actively litigation the -194 and -525 actions since the first case was filed in March 2020: the claim construction briefing for the -194 action was already completed in November 2021, the claim construction briefing for the -525 action is ongoing, Markman hearing has been scheduling for March 19, 2021, and trial has been scheduled for December 6, 2020.  To transfer the present case to another district would largely obviate all the resources expended by the parties and the Court to prepare this case. Therefore, this factor weighs against transfer.

### 2.   *Volkswagen* **Public Interest Factors**

#### a.   *"Administrative difficulties flowing from court congestion"*

A faster average time to trial means a more efficient and economical resolutions of the claims at issue. Hynix offers no evidence showing that the present case will be tried faster in CDCA than in this district.  On the contrary, the California cases have been stayed three years with no evidence of that stay being lifted and no trial date set. By contrast, the present case is set for trial in this District in December 2021, around 10 months from now. Thus, this factor weighs against transfer.

#### b.   *"Local interest in having localized interests decided at home"*

While Netlist's headquarter is located in C.D. Cal, Hynix maintains an office in Austin and provides support to one of its largest American customers in this District. On the other hand, Hynix does not contend that it has any presence in CDCA. Further, the fact that Hynix is willing to transfer the present actions to the Austin Division of this District indicates that Hynix is aware

of the localized interest of litigating the present actions in this District. On balance, the Court finds that this factor weighs against transfer.

> c. *"Familiarity of the forum with the law that will govern the case"* and *"avoidance of unnecessary problems of conflict of laws or in the application of foreign law"*

Noting that this case implicates federal patent law under Title 35 of the United States Code, the Court find that both factors are neutral for the transfer analysis.

### 3. Hynix Has Failed to Establish That CDCA Would Be Clearly More Convenient

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs slightly against transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Neutral |
| all other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs against transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

On balance, the Court is not persuaded that trial in the Central District of California would be clearly more convenient than trial in the Western District of Texas.


## III.    Intra-District Transfer

In the Fifth Circuit, the § 1404(a) factors apply to both inter-district and intra-district transfers. *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). It is well-settled that trial courts have even greater discretion in granting intra-district transfers than they do in the case of inter-district transfers. *See, e.g.*, *Sundell v. Cisco Systems Inc.*, 1997 WL 156824, at *1, 111 F.3d 892 (5th Cir. 1997) ("Under 28 U.S.C. § 1404(b), the district court has broad discretion in deciding whether to transfer a civil action from a division in which it is pending to any other division in the same district.").

Other than pointing out that Hynix has a presence in Austin, Hynix has not offered any persuasive showing that litigating the present actions in Austin would be clearly more convenient than in Waco.  On the contrary, the Austin courthouse is closed due to the Covid-19 pandemic and there is no indication that it will be open by this case's scheduled trial date.  Thus, this case can only move forward in the Waco courthouse in the near future.

# CONCLUSION

For the reasons stated above, the Court finds that Hynix has failed to meet its burden to demonstrate that litigating this case in the Central District of California, or in the Austin Division of this District would be clearly more convenient than in Waco. Accordingly, the Hynix's Motion to Transfer is **DENIED**.

The Court *sua sponte* reconsiders its previous decision to delay the Markman hearing and subsequent scheduling and rescinds it. **Accordingly, the Court re-sets the Markman hearings for the consolidated -194 and -525 actions to take place on March 1, 2021, and the case is set for jury trial for July 6, 2021**.[5]

**SIGNED** this 2nd day of February, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

[5] The claim construction briefing for the -194 action has been completed and Plaintiff filed its opening claim construction brief for the -525 action on January 20, 2021. For the -525 action, the Court orders that Defendants file responsive claim construction brief by February 8, 2021, Plaintiff file reply claim construction brief by February 23, 2021, and the parties submit joint claim construction brief by noon, February 24, 2021. The parties are also ordered to submit an amended proposed scheduling order based on these dates by February 5, 2021.