**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| NETLIST, INC.<br><br>    Plaintiff,<br><br>    vs.<br><br>SK HYNIX INC. and<br>SK HYNIX AMERICA INC.<br><br>    Defendants | Civil Action No. 6:20-cv-00194-ADA<br>Civil Action No. 6:20-cv-00525-ADA<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFF NETLIST, INC.'S REPLY CLAIM CONSTRUCTION BRIEF AS
TO U.S. PATENT NO. 10,217,523

## **TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1
II. DEFENDANTS MISSTATE THE LAW .....................................................................1
III. DISPUTED CLAIM TERMS FOR CONSTRUCTION ...............................................3
    A. The "Mode" Claim Terms ..................................................................................3
    B. The "Data Handler" Claim Terms ......................................................................5
    C. "Data Module" ....................................................................................................9
IV. CONCLUSION ............................................................................................................10

# **TABLE OF AUTHORITIES**
**Page(s)**

**Cases**

*Alloc, Inc. v. Int'l Trade Comm'n*,
 342 F.3d 1361 (Fed. Cir. 2003)...................................................................................................2

*Bell Atlantic Network Servs., Inc. v. Covad Commc'ns. Grp., Inc.*,
 262 F.3d 1258 (Fed. Cir. 2001)................................................................................................2, 3

*Bettcher Industries, Inv. v. Bunzl USA, Inc.*,
 F.3d 629, 639-640, 100 USPQ2d 1433 (Fed. Cir. 2011) ............................................................6

*In re Schreiber*,
 128 F.3d at 1478, 44 USPQ2d at 1432 .......................................................................................6

*Info-Hold, Inc. v. Applied Media Techs. Corp.*,
 783 F.3d 1262, 1265-66 (Fed. Cir. 2015) ...................................................................................2

*Kapusta v. Gale Corp.*,
 155 F. App'x 518 (Fed. Cir. 2005)..............................................................................................2

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
 177 F.3d 968 (Fed. Cir. 1999).....................................................................................................8

*Meds. Co. v. Mylan, Inc.*,
 853 F.3d 1296 (Fed. Cir. 2017)...................................................................................................3

*Nystrom v. TREX Co., Inc.*,
 424 F.3d 1136 (Fed. Cir. 2005)...................................................................................................2

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)........................................................................................ passim

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
 242 F.3d 1337 (Fed. Cir. 2001)...................................................................................................2

*Thorner,* 669 F.3d at 1365 ...........................................................................................................2, 5

*Trs. of Columbia Univ. v. Symantec Corp*,
 811 F.3d 1359, 1364-65 (Fed. Cir. 2016) ...................................................................................3

*Ultimatepointer, LLC v. Nintendo Co.*
 816 F.3d 816 (Fed. Cir. 2016).....................................................................................................3

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | U.S. Patent No. 9,858,218 |
| 2 | U.S. Patent No. 10,474,595 |
| 3 | Brent Keeth et al., DRAM CIRCUIT DESIGN (IEEE, 2008) |
| 4 | Claim Construction Order, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1089, Order No. 17 (USITC Aug. 30, 2018) |
| 5 | Initial Determination, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1089 (USITC Oct. 21, 2019) |
| 6 | Computer Desktop Encyclopedia (9th Ed., 2001) |
| 7 | Microsoft Computer Dictionary (5th Ed., 2002) |
| 8 | Hearing Transcript, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023, (USITC May 8, 2017) |
| 9 | *SK hynix v. Netlist*, IPR2020-01044, Paper No. 1, Petition for *Inter Partes* Review (PTAB Jun. 8, 2020) |
| 10 | *SK hynix v. Netlist*, IPR2020-01042, Paper No. 1, Petition for *Inter Partes* Review (PTAB Jun. 8, 2020) |
| 11 | Notice of Comm'n Det. to Review In Part Final ID, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1089, (USITC Jan. 31, 2020) |
| 12 | '595 Patent IDS dated March 1, 2019 |
| 13 | Rebuttal Witness Statement of Robert Murphy, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1089 (USITC Nov. 30, 2018) (Confidential) |
| 14 | The IEEE Standard Dictionary of Electrical and Electronics Terms (6th Ed., 1996) |

| Exhibit | Description |
|---|---|
| 15 | Transcript of the Deposition of Robert G. Wedig, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC Mar. 30, 2017) (Confidential) |
| 16 | Initial Determination, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023, Initial Determination (USITC Nov. 11, 2017) |
| 17 | Merriam-Webster's Collegiate Dictionary (10th ed., 2001) |
| 18 | Rebuttal Witness Statement of Dr. William Mangione-Smith, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC Apr. 14, 2017) (Confidential) |
| 19 | Corrected Witness Statement of Robert G. Wedig, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC Apr. 6, 2017) (Confidential) |
| 20 | Deposition Transcript Excerpt of Robert G. Wedig, Ph.D. dated October 16, 2018 (CBI) |
| 21 | U.S. Patent No. 10,217,523 |
| 22 | Witness Statement of William Mangione-Smith, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC Apr. 6, 2017) (Confidential) |
| 23 | Initial Determination, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC Nov. 14, 2017) |
| 24 | Non-Final Rejection (USPTO March 9, 2016) |
| 25 | Applicant Arguments (USPTO July 11, 2016) |
| 26 | Final Rejection (USPTO October 20, 2016) |
| 27 | SK hynix's Pre-Hearing Brief, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC April 18, 2017) (Confidential) |

| Exhibit | Description |
|---|---|
| 28 | Rebuttal Witness Statement of William Hoffman, *Certain Memory Modules and Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1023 (USITC Apr. 16, 2017) |
| 29 | U.S. Patent No. 8,689,064 |
| 30 | U.S. Patent No. 8,001,434 |
| 31 | U.S. Patent No. 8,359,501 |

### TABLE OF DISPUTED TERMS AND PROPOSED CONSTRUCTIONS

| Brief Section | Claim Term | Plaintiff | Defendants |
|---|---|---|---|
| The "mode" claim terms | "first mode" | The term "first" does not require construction.<br><br>The term "mode" means "a distinct behavioral state that a system may be switched to." | "normal mode" |
| | "second mode" | The term "second" does not require construction.<br><br>The term "mode" means "a distinct behavioral state that a system may be switched to." | "self-test mode" |
| The "data handler" claim terms | "data handler logic element[s]" | The term "data handler logic element[s]" does not require construction and should receive its plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention. | "logic element(s) that generate and manage data, where generate means to produce (i.e., bring into existence, including by transformation or modification of information and/or data received from another component), which does not include packing and unpacking data from a packet, and manage means to process, transfer and/or control the movement of" |
| | "data handler" | The term "data handler" does not require construction and should receive its plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention. | "circuitry that generates and manages data, where generate and manage have the meanings set forth above" |
| The "data module" claim term | "data module" | The term "data module" does not require construction and should receive its plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention. | "module including at least one [data handler]"[1] |

---

[1] SK hynix revised its construction in its responsive briefing from what it originally proposed.

**I.      INTRODUCTION**

Patent claims should be interpreted as written. Since *Phillips*, the Federal Circuit has consistently instructed that claims should not be rewritten absent the patentee expressly redefining a term or disavowing its full scope. Defendants uniformly ignore this precept, and attempt to rewrite the present patent's claims with limitations stolen from <u>different</u> patents. Specifically, Defendants attempt to inject the term "generate" into the present claims, because the accused categories of products were found to not infringe the "generate" term of the '523 Patent's parent patents. But that term does not exist in the claims here. Instead, the '523 Patent claims include the term "provide," which Defendants previously admitted does <u>not</u> mean "generate." Nonetheless, Defendants seek to read "generate"—and a litany of other extraneous limitations—into the claims without support in the specification. Separately, but equally in conflict with established claim construction precedent, Defendants attempt to inject limitations from the preferred embodiments into the simple words "first" and "second." This approach is fundamentally improper.

By contrast, each of Netlist's proposed constructions is proper in view of the intrinsic record and well-established claim construction precedent. Netlist's constructions should be adopted, and Defendants' improper proposals should be rejected.

**II.     DEFENDANTS MISSTATE THE LAW**

Much like their improper approach to the first round of claim construction briefs in this consolidated case (*see* ECF Nos. 58, 63, 71), Defendants' Responsive Brief (ECF No. 89 ("DBr.")) relies on **pre-*Phillips*** and inapposite case law to try to read unclaimed limitations from the embodiments into the claims. As previously explained, rewriting the claims like this would contravene well-established claim construction law. ECF Nos. 61 and 66. For example, and contrary to the entire thrust of Defendants' approach to claim construction in this case, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment,

the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323. This is black letter law—law that is completely ignored by Defendants. "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must clearly express an intent to redefine the term." *Thorner*, 669 F.3d at 1365; *see also Kapusta v. Gale Corp.*, 155 F. App'x 518, 521 (Fed. Cir. 2005). Nothing Defendants cite or argue contradicts this long-held standard. Contrary to Defendants assertion, Netlist does not suggest that "turning a blind eye to the specification" is proper. DBr. at 6. In fact, Netlist's claim construction arguments are the only ones actually supported by the specification.

Likewise, Defendants somehow contend that foundational Federal Circuit authority is somehow an "incomplete and incorrect statement of law." DBr. at 4-5. In particular,

> a skilled artisan reads claim language in the context of the claims, the specification, and the prosecution history, using them to resolve any uncertainties. Though the claim term may appear plain on its face, we may depart from that plain meaning '1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.'

*Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1265-66 (Fed. Cir. 2015) (quoting *Thorner*, 669 F.3d at 1365). Defendants ignore this standard, apparently because it undermines all of their claim construction arguments.

As a separate issue, Defendants cite to out-of-date cases to argue that aspects of the disclosure taught in the specification should be read into the claims as limitations. DBr. at 5-8 (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001); *Bell Atlantic Network Servs., Inc. v. Covad Commc'ns. Grp., Inc.*, 262 F.3d 1258 (Fed. Cir. 2001); *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136 (Fed. Cir. 2005); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003)). These cases apply a pre-*Phillips* claim construction standard that is no longer good law. This court should follow the *en banc* decision in *Phillips*—

which has been the settled law on claim construction for fifteen years. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

But even the post-*Phillips* cases identified by Defendants do not stand for the proposition they argue. For example, in *Ultimatepointer, LLC v. Nintendo Co.* 816 F.3d 816, 824 (Fed. Cir. 2016), the court found both clear and unambiguous disavowal <u>and</u> patentee lexicography—not that an embodiment should be read into the claims. *Id.* 823 (finding that the specification expressly limits the invention to an embodiment, and disparages an alternative embodiment), 824 (finding that the patentee provided lexicography of the preferred embodiment). Likewise, while *Trs. of Columbia Univ. v. Symantec Corp.* cautioned against an overly rigid disavowal analyses, the court in that case found disavowal of claim scope in the specification and prosecution history. DBr. at 7-8; 811 F.3d 1359, 1364-65 (Fed. Cir. 2016) (finding that describing features as "most informative" is disavowal of claim scope). Similarly, the situation in *Meds. Co. v. Mylan, Inc.* is inapposite. *Meds. Co. v. Mylan, Inc.*, 853 F.3d 1296 (Fed. Cir. 2017). In that case, the court rejected the plaintiff's construction because it was a means-plus-function limitation with nothing in the specification to justify such scope. *Id.* at 1306. Absent any limitation in the claims themselves, the court looked to the specification for guidance. *Id.* at 1306-09. In other words, none of the circumstances present in Defendants' post-*Phillips* cases exist here.

### III. DISPUTED CLAIM TERMS FOR CONSTRUCTION

#### A. The "Mode" Claim Terms

Defendants do not attempt to interpret the operative word, "mode." Rather, their circular constructions offer only to rewrite the terms. Defendants rely on pre-*Phillips* claim construction standards, citing *Bell Atlantic Network Servs., Inc. v. Covad Comm. Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). There, the court constrained the term "plurality of different modes" where the specification **<u>expressly confined</u>** "mode" to only three enumerated modes. Here, by contrast,

3

the specification does not confine the disclosed "modes" to the exemplary modes. Instead, the patent is clear that "a plurality of modes" exist. '523 Patent at 2:38-47.

Of course, the patent claims are "of primary importance, in the effort to ascertain precisely what it is that is patented." *Phillips*, 415 F.3d at 1312. Yet Defendants ignore the context of the claims, instead arguing semantics. The terms "first" and "second" are not limitations on the claimed "modes" above and beyond being used to differentiate the claimed "modes." Put another way, the plain language of the claims clarifies that the "first mode" is a distinct behavioral state from the "second mode." That is all. Beyond this, it is the specific limitations recited in the claims that define the scope of each "mode." Netlist's construction is the only one that honors this.

Specifically, the claims set forth specific requirements for configuring the control module and data module in each respective "mode." Independent claim 1 states that the control module in the "first mode" must be:

> configured to receive system address and control signals from the system memory controller and to output first memory address and control signals to the memory devices according to the system address and control signals

'523 Patent at Claim 1. Likewise, the data module in the "first mode" must be:

> configured to propagate one or more first data signals between the memory devices and the system memory controller, the one or more first data signals being transmitted or received by at least a portion of the memory devices in response to the first memory address and control signals

*Id*. Similarly, independent claim 1 also sets forth that the control module in the "second mode" must be "configured to output second memory address and control signals to the address and control ports of the memory devices." *Id*. Finally, the data module in the "second mode" must be:

> configured to isolate the memory devices from being accessed by the system memory controller and to transmit one or more second data signals including data patterns provided by the data handler logic elements to the data ports of the memory devices according to one or more commands output from the control module, and wherein at least a portion of the memory devices are configured to receive the one

or more second data signals according to the second memory address and control signals from the control module.

*Id*. Independent Claim 19 includes similar requirements for the claimed "modes." *Id*. at Claim 19.

Each claimed "mode" is satisfied when a memory module is configured to perform the functionality of each "mode" recited in the claims. There is no ambiguity to resolve. Rather than look to the context of the claims, Defendants attempt to re-write the adjectives "first" and "second" to be <u>additional limitations above and beyond</u> what the claims already require.

Defendants fail to identify any valid justification for rewriting the claims as they urge. DBr. at 9-10. That is because their position is contrary to current law. *Thorner*, 669 F.3d at 1366-68. The best Defendants can muster as support for rewriting the claims are Netlist's statements in a related IPR, but these statements are taken out context and facially mischaracterized. *See* DBr. at 10 (citing Ex. 69, POPR at 14-15). The quote is taken from an "Overview of the '523 Patent" section of Netlist's POPR, in which Netlist did not provide any representations concerning claim construction or scope. Ex. 69, POPR at 14-15. Regardless, Netlist was clear that the memory module "operates in **<u>at least</u>** two distinct modes of operation." Ex. 69, POPR at 14 (emphasis added). As a throwaway, Defendants also rely on a statement from Netlist's expert in an IPR for an **<u>unrelated</u>** patent to oddly suggest "mode" is not being used in its ordinary sense. DBr. at 12 (citing Ex. 54 at 77:14-25). In reality, Netlist's expert stated the opposite. Ex. 54 at 8:23-9:2.

Nothing Defendants argue or cite suggests this Court should ignore binding Federal Circuit precedent on claim construction. No circumstance exists that could justify importing limitations from the specification into the claims. Only Netlist's proposed construction should be adopted.

B.  The "Data Handler" Claim Terms

Defendants suggest that, during prosecution, Netlist argued the **<u>terms</u>** of the patent were not well-known. DRBr. at 13 ("[Netlist] told the Patent Office that these **<u>terms</u>** were not 'well-

known' or 'conventional.'") (emphasis added); DRBr. at 15 (stating "that 'data handlers' and 'data handler logic elements' (and 'data module' addressed in the next section) are not well-known or conventional **terms** in the art.") (emphasis added). Netlist made no such argument. Instead, Netlist stated, in response to a Section 101 rejection, that "no prior art memory module with the structural and functional features recited in claim 1" exists. Ex. 70 at 384; *see also id.* (stating that, "[a]t the time the present application was filed, there were no well-known and conventional/generic memory modules" that performed the functions recited in the claims); *see also id.* (noting that the examiner failed to identify where the claimed functionality existed in any prior art structure) (citing *In re Schreiber*, 128 F.3d at 1478, 44 USPQ2d at 1432; *Bettcher Industries, Inv. v. Bunzl USA, Inc.*, F.3d 629, 639-640, 100 USPQ2d 1433, 1440 (Fed. Cir. 2011))).

That the specific hardware structures and their functionality did not exist in the art, however, does not mean that a POSITA would not understand the plain and ordinary meaning of the terms Netlist used to claim them. Defendants incorrectly conflate these two concepts. As Netlist explained, the "data module," "data handler logic elements," and "data handlers" are "specifically structured hardware" designed to perform the functions recited in the claims. Ex. 70 at 383-384. Defendants provide no persuasive argument that a POSITA would not understand what the terms "data," "handler," "logic," or "element," alone, or in combination, would mean in view of the '523 Patent's specification. To the contrary: a POSITA would readily understand the plain and ordinary meaning of the terms in the context of the claims and specification. PBr. at 10-20.

Separately, and in keeping with the theme of their other arguments, Defendants also attempt to rewrite the '523 Patent claims without any attention to claim context. Specifically, Defendants use the "data handler" claim elements—which lack any mention of "generate and manage" limitations—to attempt to improperly introduce these unclaimed limitations from the

6

Parent Patents.[2] This Court should reject Defendants' attempt to rewrite the present claims to include unclaimed limitations from the Parent Patents' claims, and should also reject Defendants' attempt to improperly further construe those same unclaimed limitations.

Defendants' argument rests on its admitted dismissal of the claims' context as "irrelevant." DBr. at 18. That is improper. *Info-Hold, Inc.*, 783 F.3d at 1268 ("a skilled artisan reads claim language in the **context of the claims**, the specification, and the prosecution history, using them to resolve any uncertainties.") (emphasis added)); *Phillips*, 415 F.3d at 1312 ("the claims are of primary importance"). The context of the claims clearly shows that the claimed "data handler logic elements" "provide data patterns." Contrary to Defendants' arguments, nothing in the claims requires that the claimed "data handler" manage or generate data patterns. For example, the claim element in independent claim 1 contains the disputed claim term:

> the data module in the second mode is configured … to transmit one or more second data signals including data patterns **provided** by the **data handler logic elements** to the data ports of the memory devices according to one or more commands output from the control module

'523 Patent at Claim 1 (emphasis added). The term "data handler logic elements" is already limited by the plain claim language. A POSITA reading the claim would understand that the data handler logic elements provide one or more second data signals including data patterns for transmission to the data ports. Similarly, the term "data handlers" is limited by the claim language in Claim 19:

> wherein, in the first mode, … the **data handlers** are configured to **propagate** one or more data signals associated with the memory read or write operations between the memory devices and the connector … wherein, in the second mode, the **data handler logic element** in the each respective **data handler** is configured to **provide** respective data patterns to the respective group of one or more memory devices

---

[2] The "Parent Patents" to the '523 Patent are U.S. Patent Nos. 8,001,434, 8,359,501, and 8,689,064. Netlist asserted these Parent Patents against Defendants in International Trade Commission Investigation No. 337-TA-1023 and in C.D. Cal. (No. 8:16-CV-01605).

*Id*. at Claim 19 (emphasis added). A POSITA understands, based even on the plain language of the claims alone, that the data handler is configured to propagate one or more data signals associated with the memory read or write operation in the first mode, and is configured to provide data patterns to memory devices in the second mode. There is no uncertainty that must be resolved.

Defendants ignore this context and instead seek to inject into the '523 Patent claims several unclaimed limitations from claims of the Parent Patents—none of which are asserted here. There is no justification for this approach: "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999).

Defendants allege that "Netlist and its experts have stated that the "data handlers generate data to test the memory devices" but fail to provide any context. DBr. at 15. None of those statements relate to the claims at issue here. Rather, those statements relate to different claims that expressly claimed "data handlers" that "generate" data. *See e.g.*, Ex. 30, '434 Patent at Claim 1 (claiming "each of the data handlers … configured to generate"); Ex. 31, '501 Patent at Claim 1 (claiming "one or more data handlers … are configured to generate"); Ex. 29, '064 Patent at Claim 1 (claiming "a plurality of data handlers … configured to generate"). To state the obvious from the plain claim language here, the '523 Patent claims do not claim data handlers that generate data. Instead, they claim "data patterns **provided** by the data handler logic elements" and "data handler [] configured to **provide**." '523 Patent at Claims 1, 19. "Provide" and "generate" are not interchangeable terms. Defendants have conceded this fact. DBr. at 18 ("'generate' and 'provide' do not have the same meaning").

Yet Defendants ignore that the claims plainly recite that the "data handler logic elements" and "data handlers" "**provide**" data, and do not mention "generating" data. Instead, they ask the

8

Court to rewrite these claim elements to require the "data handler logic elements" and "data handlers" to "**generate**" data. DBr. at 13. Not only is such a request improper, but, in doing so, Defendants inject unnecessary ambiguity into the claims. Defendants' proposed construction adds little more than a potpourri of unhelpful limitations, none of which are mandated by the intrinsic record. *See* PBr. at 12-14 (ECF No. 80). Defendants attempt to justify their multiple derivative constructions as "avoid[ing] *O2 Micro* issues." DBr. at 18. But no perceptible *O2 Micro* issues exist. The only issue stems from Defendants' attempt to improperly import unclaimed limitations from different patents.

Defendants ignore the many other problems with their proposed construction: the circular definition, the unsupported negative limitation, and the ambiguity it creates. *See generally*, DBr. at 13-19. Most importantly, Defendants contradict established law to argue that the additional limitations should be imported "absent lexicography or disclaimer." *Id.* at 18. This is clearly erroneous and contrary to clear precedent. *See Info-Hold, Inc..*, 783 F.3d at 1265-66.

### C. "Data Module"

Defendants tacitly acknowledge their original proposed construction was improper by revising their construction "to address certain of Netlist's criticisms." DBr. at 20, n. 13. Defendants now agree that the claimed "data module" does not necessarily include multiple data handlers. *Id*. However, Defendants' proposed construction remains inappropriate for numerous reasons.

First, Defendants incorporate by reference their improper construction of "data handler." Defendants' proposed construction for "data module" is improper in so far as it includes Defendants' improper construction of "data handler." *See* Section III.B, *supra*.

Second, Defendants' suggestion that Netlist argued that a data module was "**not** a conventional or well-known term in the art" is incorrect. Netlist never made that argument. As explained above, Netlist took the position that "no prior art memory module with the structural

9

and functional features recited in claim 1" exists. Ex. 70 at 384; *see also* Section III.B, *supra*. Defendants improperly conflate (1) whether a POSITA would understand what the term "data module" means in view of the specification and (2) whether the specific hardware structures and functionality claimed in the '523 Patent existed in the art. Netlist argued against the latter, not the former. A POSITA would clearly understand what a "data module" means in view of the specification. PBr. at 17-20.

Third, Defendants' revised construction still fails because it ignores explicit disclosures in the specification. According to the specification, the data module does not require any data handlers. The specification clearly states that "one or more of the various functional blocks… of the data module 28 of FIG. 3 **may not** be included." *Id*. at 12:50-52 (emphasis added). Indeed, the data module may comprise merely "one physical component." *Id*. at 12:60-62. The specification further explains that, only "**in certain embodiments**, the data module 28 comprises a plurality of data handlers 30." *Id*. at 10:10-11 (emphasis added). In other words, a possible—but not required—configuration of a data module may include one or more data handlers.

There is no justification for importing the "data handler" claim limitation into the "data module" claim term. Defendants' argument to the contrary requires limiting the claims to certain embodiments while ignoring others. *See* DBr. at 20. That is improper. *Phillips*, 415 F.3d at 1323.

## IV.  CONCLUSION

The Court should adopt Netlist's proposed constructions and should reject the unsupported and erroneous constructions advanced by Defendants.

Dated: February 23, 2021

/s/ *Andrew H. DeVoogd*
James M. Wodarski
  (*Admitted pro hac vice*)
  Massachusetts BBO No. 627036
  E-mail: JWodarski@mintz.com
Andrew H. DeVoogd
  (Admitted to practice in WDTX)
  Massachusetts BBO No. 670203
  E-mail: AHDeVoogd@mintz.com
Matthew S. Galica
  (*Admitted pro hac vice*)
  Massachusetts BBO No. 696916
  E-mail: MSGalica@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND
  POPEO P.C.
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241

J. Stephen Ravel
  Texas State Bar No. 16584975
  Email: steve.ravel@kellyhart.com
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429

*Attorneys for Plaintiff Netlist Inc.*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on February 23, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ *Andrew H. DeVoogd*
Andrew H. DeVoogd
